## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| KARLA MOLINA-PARRALES, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:12-cv-00947 |
| | ) | Chief Judge Haynes |
| v. | ) | |
| | ) | |
| SHARED HOSPITAL SERVICES | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff, Karla Molina-Parrales, filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4–21–101 et seq. ("THRA"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12300 ("ADA"), the Tennessee Disability Act, Tenn. Code Ann. § 8–50–103 ("TDA") against the Defendant, Shared Hospital Services Corporation ("SHS"), her former employer. Plaintiff also asserts a Tennessee common law claim for retaliatory discharge. In essence, Plaintiff alleges discrimination based on her disability status, race and national origin as well as a victim of a hostile work environment and retaliation. A Case Management Order was entered and the parties proceeded with discovery.

Before the Court is Defendant's motion for summary judgment (Docket Entry No. 16), contending, in sum: (1) that Plaintiff was not disabled under federal or state law; (2) that Plaintiff was not discriminated against because of any disability; (3) that Plaintiff was not discriminated against because of her national origin or race; (4) that Plaintiff failed to exhaust her administrative remedies on her hostile work environment claim; (5) that the Defendant did not retaliate against

Plaintiff for submitting a worker's compensation claim; (6) that Defendant has articulated legitimate non-discriminatory reasons for Plaintiff's termination and (7) that Plaintiff's proof cannot prove those reasons to be a pretext for discrimination or retaliation.

## A. Findings of Fact[1]

Plaintiff, Karla Molina-Parrales who is of Nicaraguan origin, identifies herself as Hispanic. In January 2010, SHS hired Plaintiff as a production worker in its laundry department. (Docket Entry No. 20, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at ¶ 2). In that position, Plaintiff fed clean towels into a folding machine. Id. During her employment and at the time of her termination, Plaintiff reported to Ofelia Morales. (Docket Entry No. 21-1, Plaintiff's Deposition at 46). At the time of Plaintiff's termination, Morales's supervisor was Mark Beasley. (Docket Entry No. 23-1, Morales Deposition 15). Plaintiff's job did not require her to lift or push or pull more than 10 pounds, but on June 22, 2010, Plaintiff had difficulty moving a heavy cart and injured her back. (Docket Entry No. 22 at ¶ 12 and Docket Entry No. 21-1, Plaintiff's Deposition at 52-53 and 56-57). Beasley provided the written authorization for Plaintiff to see a physician whose diagnosis was a lumbar strain. Id.; Docket Entry No. 20, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at ¶¶ 12 and 14.

Plaintiff's lumbar strain required temporary restrictions on her work activity, namely, no

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247–52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). There are some factual disputes, but the Couurt concludes that those disputes are not material under the applicable law. Thus, this section does not constitute a findings of fact under Fed. R. Civ. P. 56.

lifting over 10 pounds; no pushing/pulling over 10 pounds of force; no bending more than 10 times per hour; and no squatting, kneeling, or climbing stairs or ladders. Id. These restrictions precluded performance of Plaintiff's regular job. Id. at ¶ 15. SHS accommodated Plaintiff's work restrictions detailed in her doctor's notes. Plaintiff was assigned light duty work that she continued until her termination. Id. at ¶¶ 17, 37, and 38. On June 23, 2010, Plaintiff filed a worker's compensation claim that Harley Baker, a SHS employee, processed. Id. at ¶ 16 and Docket Entry No. 15-4, at 2).

Prior to her injury, Plaintiff had leave issues. On June 6, 2010, Plaintiff received an oral warning for a late arrival without a prior telephone call. (Docket Entry No. 22-1, Beasley Deposition 95). Plaintiff received another oral warning on July 6, 2010. (Docket Entry No. 22-1 att 123) On July 21, 2010, Plaintiff received a written warning for "no call, no show" on July17 and 19, 2010. (Docket Entry No. 20, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts at ¶ 30; Docket Entry No. 22-1, Beasley Deposition 123.) The July 21st warning stated:

> Employee must communicate with her supervisor EACH Day she will
> not be able to work
> Leaving a Voice Mail Message is unacceptable
> She must speak to Mark

Id. On August 6, 2010, Plaintiff received a fourth warning that was her third oral warning for a "no call, no show" on August 5, 2010. (Docket Entry No. 20, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at ¶ 30; Docket Entry No. 21-1, Parrales Deposition, Exhibit 6 thereto). Plaintiff signed the warning notices and did not dispute the violations. (Docket Entry No. 20, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at ¶ 35). Plaintiff testified that she provided doctor notes and understood that a voicemail was sufficient. (Docket Entry No. 21-1, Plaintiff's Deposition at 74, 79-80). Between January 12, 2010 to May 31,

2010, Plaintiff was absent from work 32 days. (Docket Entry No. 20, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at ¶ 11). Plaintiff missed 23 days in July and August, 2010. Id. at ¶ 21. There were times when Plaintiff properly reported her leave. Id. at ¶ 26, 28.

Under SHS's policies, employees who seek scheduled leave must provide 48 hour advance notice to their supervisors. Id. at ¶ 24. Any employee who will miss work unexpectedly or will be late for work must telephone and directly speak to his or her supervisor at least one hour prior to the start of the employee's shift. Id. SHS policy is that "leaving a message on voicemail was not acceptable" and that "even with a doctor's note excusing an employee to be off work, employees are expected to call in each day they are absent." Id. ¶¶ 26 and 27. Although Plaintiff asserts that a voicemail was sufficient to "notify"[2] a supervisor citing Morales's deposition, Morales testified that if the office personnel did not answer a telephone call that an employee could leave a voice message, but the employee still had to call his or her supervisor. (Docket Entry No. 23-1 Morales Deposition at 25-27). Morales gave Plaintiff her cell telephone number for that purpose. Id.

As to the circumstances of Plaintiff's termination, on August 18, 2010, Dr. Glattes, Plaintiff's physician, provided SHS with an "Assessment/Plan" that Plaintiff "can return to work full duty 8/19. She is at maximum medical improvement. She may not tolerate her work, this will be up to her." (Docket Entry No. 21-1, Plaintiff's Deposition at 185). On a "Work Comp Status Sheet" filed with SHS, Dr. Glattes checked off the "return to full duty" option. (Docket Entry No. 15-4, at 8). Plaintiff cites Dr. Glattes's notation that "She may not tolerate her work" as a restriction (Docket Entry No.

---

[2] Plaintiff cites Bailey's deposition for this point, but does not cite the page number of that deposition. As discussed infra, the Court is not required to search the record and counsel's obligation under Local Rule 56.01 is to provide a precise citation for each factual assertion.

20, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at ¶ 36), but SHS cites Dr. Glattes's statement that Plaintiff "is at maximum medical improvement" and his release of Plaintiff without work restrictions. Id.

On September 14, 2010, Plaintiff telephoned SHS's office less than one hour before her shift began to state that she would be absent from work. Id. at ¶ 39. On that day, Plaintiff saw a physician who noted under the section marked "A/P" for assessment and plan that she had a "left foot nodule" that required evaluation by podiatry, and that her rectal bleeding was "resolved for now." (Docket Entry No. 24-1, Deposition at 44).

On September 15, 2010, Plaintiff telephoned SHS less than one hour before her shift started to state that she would be absent from work. (Docket Entry No. 20, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at ¶ 41). The medical provider who treated Plaintiff on September 14th faxed SHS a note dated September 14th that Plaintiff was medically released to return to work on September 15, 2010. Id. at ¶ 40. On September 16, 2010, Plaintiff returned to work, but told her supervisor that for medical reasons, she was unable to work through September 20th. Id. at ¶ 45. Plaintiff provided another doctor note dated September 17, 2010, that would excuse her from work on September 17th (Docket Entry No. 22-1, Beasley Deposition at Exhibit 5). Plaintiff then sent the same September 17th note with additional handwritten entries that excused Plaintiff from work from September 15th through 20th. Id, at Exhibit 6. Plaintiff's physician testified that he may have authorized his secretary to add the additional dates to the September 17th note, but lacks a specific recollection. (Docket Entry No. 24-1 at 15, 20 and 25).

On September 20, 2010, SHS terminated Plaintiff's employment, citing an altered doctor's note, an unexcused absence without a doctor's note, and Plaintiff's violation of SHS's call-in rules

after previous warnings. (Docket Entry No. 20, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at ¶¶ 38 and 51). According to Plaintiff, Beasley accused her of obtaining a medical note from a nurse at the physician's office. Beasley assumed that Plaintiff was related to the nurse because both Plaintiff and the nurse spoke Spanish. (Docket Entry No. 21-1, Deposition 146).

On June 24, 2011, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Docket Entry No. 20, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at ¶ 72). According to Plaintiff, Hispanics were treated differently and she cites a higher production quota than other non-Hispanic employees. (Docket Entry No. 21-1, Deposition 141-42). Plaintiff was told that she could not speak Spanish on the floor or in the breakroom, "once and then they said it again two times." Id. at 144-45. The EEOC issued Plaintiff a right to sue letter.

### B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.

<u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247–48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355–57 (6th Cir. 1989). <u>But see</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in <u>Celotex</u>:

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its

7

> motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.... [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n.4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden–Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J .C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d

790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting <u>Liberty Lobby</u>).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> <u>More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>
>
> ....
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.</u> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.</u> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's

are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute....'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and

other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1.  Complex cases are not necessarily inappropriate for summary judgment.
>
> 2.  Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3.  The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5.  A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
>
> 6.  As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7.  The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.
>
> 8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> 9.  The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

> 10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479–80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

**1. Exhaustion of Remedies**

Defendant contends that Plaintiff failed to exhaust her administrative remedies on her hostile work environment claim that is not in her EEOC charge. A Title VII plaintiff alleging discrimination must first file a charge with the EEOC within a certain time after the occurrence of the alleged wrongful act or acts. Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 361 (6th Cir. 2010). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." Id. The purpose of this rule is to give "the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute." Id. Courts, however, recognize that "because aggrieved employees—and not attorneys—usually file charges with the EEOC, their pro se complaints are

construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." Id. at 362. Of course, "[t]his expanded rule does not mean ... that plaintiffs are excused from filing charges on a particular discrimination claim before suing in federal court." Davis v. Sodexho, 157 F.3d 460, 463 (6th Cir. 1998). Yet, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." Id.

Here, in her EEOC filing, Plaintiff did not assert a claim of hostile work environment, only that she was "discriminated against because of [her] race/national origin [and] because [she is] Hispanic." Plaintiff's EEOC charge cites one discrete act of discrimination based on her race/national origin, namely that she was accused of falsifying a document with a Spanish-speaking employee at her physician's office. (Docket Entry No. 21-1, at 181). For a hostile work environment claim the plaintiff must describe conduct that "unreasonably interfer[es] with her work performance and creat[es] an objectively intimidating, hostile, or offensive work environment." Grace v. USCAR, 521 F.3d 655, 678 (6th Cir. 2008). Harassment involves repeated conduct that occurs over a period of time and "a single act of harassment may not be actionable on its own." National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 102-03 (2002).

Here, Plaintiff's EEOC administrative charge did not allege facts nor assert any claim for a hostile work environment. Plaintiff's EEOC charge would not have caused the EEOC to investigate or consider a charge of a hostile work environment. Accordingly, the Court concludes that Plaintiff's hostile work environment claim is unexhausted and cannot be a claim for relief in this action.

### 2. Race and National Origin Discrimination

As to Plaintiff's claim of discrimination based upon her race and national origin, Title VII

of the Civil Rights Act of 1964, provides:

> It shall be an unlawful employment practice for an employer—
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a).

Absent direct evidence of discrimination, Title VII claims are evaluated in a three-part, burden-shifting analysis: (1) the plaintiff must establish a prima facie case of discrimination; (2) the employer must articulate some legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff must prove that the stated reason was pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); accord Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). The burden of persuasion remains with the plaintiff at all times. Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir. 1990).

For her disparate treatment claims under Title VII, Plaintiff's prima facie showing of disparate treatment requires proof that:

> (1) Plaintiff is member of a protected class;
> (2) Plaintiff suffered an adverse employment action;
> (3) Plaintiff was qualified for the position;
> (4) Plaintiff was treated differently than similarly-situated employees outside of the protected class for the same or similar conduct.

Abeita v. Transamerica Mailings, Inc., 159 F.3d 246, 252 (6th Cir.1998). See also McDonnell Douglas Corp., 411 U.S. at 802.

As to any disparate treatment claim, under Title VII, Plaintiff must show that the comparable employees are "similarly situated in all respects." Hollins v. Atlantic Co., Inc., 188 F.3d 652, 659 (6th Cir. 1999) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir.1992)). We note, however, that "'Precise equivalence ... between employees' is not required." Hollins, 188 F.3d at 659 (quoting Harrison, 80 F.3d at 1115). Thus, the similarly-situated employees with whom Plaintiff seeks to compare her treatment must have "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell, 964 F.2d at 583.

In Ercegovich v. Goodyear Tire and Rubber Co., 154 F.3d 344 (6th Cir. 1998) the Sixth Circuit warned against reading Mitchell so narrowly as to require a plaintiff to be identically situated to the non-protected employee in every single aspect of their employment. Id. at 353. For with such a narrow reading, "a plaintiff whose job responsibilities are unique to his or her position will never successfully establish a prima facie case (absent direct evidence of discrimination)." Id. The employee and his or her similarly situated counterparts only need be similar in "all of the relevant aspects." Id. at 352.

As applied here, Plaintiff, a Hispanic woman, is a member of a protected class. As to Plaintiff's claim of adverse employment action, Plaintiff was discharged. Neither party disputes Plaintiff's qualifications for her position as a "production worker in dry fold."

As to the fourth element, Plaintiff asserts different treatment from other employees in four aspects of her work: (1) higher production rates than other employees due to her race/national origin; (2) a requirement to not speak Spanish in the workplace; (3) an assumption that Plaintiff was related

to a nurse at her physician's practice because they both spoke Spanish, which led to an accusation of conspiracy to alter her doctor's note; and (4) different reporting requirements for Plaintiff than other employees that required her to report only to a non-Spanish speaking supervisor, Beasley. (Docket Entry No. 19, at 12-14).

Plaintiff was not fired for lack of performance under the alleged higher production rates placed on her, nor for violating the alleged "English only" policy. Plaintiff therefore did not suffer any adverse employment action from the alleged higher production rates or from the alleged English-only requirement. The only adverse employment action was Plaintiff's termination based upon her violations of SHS's leave rules.

As to Plaintiff's violation of SHS rules on leave requests, Plaintiff relies upon Morales to assert that a material factual dispute exists on SHS's actual rule requirements, namely whether a voice mail or doctor's note alone was sufficient to comply with SHS's leave policy. Morales testified that she told Plaintiff to leave a voice message if her calls were not answered by office personnel, but Morales also testified that she told Plaintiff that Plaintiff still had to call her supervisor and provided Plaintiff her cell telephone number for that reason. In any event, after Plaintiff's leave violations on July 6, 17 and 20, Beasley's July 21st written notice clearly informed Plaintiff that a voice message was insufficient and that Plaintiff had to speak directly to Beasley for approved leave.

Whatever ambiguities exists about Plaintiff's proof to justify her absences during the week of September 15th through September 20th, by that time Plaintiff's prior history of oral and written warnings for her leave violations present legitimate reasons for her termination. Between January 12, 2010 to May 31, 2010, Plaintiff was absent from work 32 days. (Docket Entry No. 20, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at ¶ 11). Plaintiff missed 23 days

16

in July and August, 2010. Id. at ¶ 21. There were times when Plaintiff properly reported her leave. Id. at ¶ 26, 28). Plaintiff's proof does not demonstrate SHS's reasons for her termination to be pretextual. For these reasons, the Court concludes that Plaintiff's proof cannot support a judgment on her Title VII claims.

### 3. ADA

For her ADA claim, the ADA provides:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).

Under the ADA, a person is disabled if she has:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1) (1990) (amended 2008).

The ADA describes "major life activities" to include: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (1990) (amended 2008). To be "regarded as" disabled, the employee is required to establish "that . . . she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to

17

limit a major life activity." Id. at § 12102(3)(A).

Plaintiff contends that she was substantially limited in the major life activities of lifting, performing manual tasks, and working. (Docket Entry No. 1-1, at 55). On multiple occasions, Plaintiff presented doctor's notes to SHS that included lifting restrictions. (Docket Entry No. 20, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at ¶ 14; Docket Entry No. 21-1, Deposition at 190). SHS responds that the doctor's note stated Plaintiff "is at maximum medical improvement." (Docket Entry No. 20, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at 36). Thus, SHS contends that Plaintiff was no longer disabled and also cites Plaintiff's ability to perform different types of work after her termination.

After decisions narrowly interpreting the term "disability" in the ADA, Congress enacted the ADA Amendments Act ("ADAAA"). The ADAAA requires that the term "disability" be construed in favor of broad coverage. 42 U.S.C. § 1202(4)(A). After the ADAAA, the EEOC regulation defined "substantially limited" under the ADAAA as "not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(I) and (iii). "An impairment need not prevent, or significantly restrict, the individual from performing a major life activity in order to be considered substantially limiting." Id. at § 1630.2(j)(1)(ii).

For this claim, Plaintiff's proof must make "a prima facie showing that "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." Whitfield v. Tennessee, 639 F.3d 253, 258-59 (6th 2011) (quoting Macy v. Hopkins Cnty. Sch. Bd. of Educ., 484 F.3d 357, 365 (6th Cir.2007) (quoting

Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1186 (6th Cir.1996)).

As to first element of a "disability," the issue is whether Plaintiff's weight restrictions qualify as a disability under the ADAAA. Some district courts have found "weight lifting restrictions to be adequate to constitute a disability under the ADA, or at least sufficient to avoid summary judgment on the issue." Tate v. Sam's East, Inc., No. 3:11-cv-87, 2013 WL 1320634, at *11 (E.D. Tenn. March 29, 2013); see also Lohf v. Great Plains Mfg., Inc., No. 10–1177–RDR, 2012 WL 2568170, at *4–6 (D. Kan. July 2, 2012) (although a close question plaintiff's proof of a twenty-five to thirty pound lifting restriction with the need to alternate sitting and standing may prove a disability); Mills v. Temple Univ., 869 F. Supp. 2d 609, 621–22 (E.D. Pa. 2012) (three pound lifting restriction sufficient to create a material factual dispute as to disability and survive summary judgment); Williams v. United Parcel Servs., Inc., 2:10–1546–RMG, 2012 WL 601867, at *3 (D.S.C. Feb.23, 2012) (adopting a report and recommendation that material factual dispute exists on whether plaintiff's twenty pound lifting restriction was a disability under the ADAAA); Farina v. Branford Bd. of Educ., No. 09–CV–49, 2010 WL 3829160, at *11 (D. Conn. Sept. 23, 2010) aff'd, 456 Fed. App'x 13 (2d Cir. 2011) ("it is possible that even a relatively minor lifting restriction could qualify as a disability within the statute").

Here, the Court concludes that Plaintiff's proof of her lifting restrictions creates a material factual dispute on whether Plaintiff has a disability within the meaning of the ADAAA. SHS does not dispute that Molina-Parrales was "otherwise qualified" for her position, or that it knew of this disability.

As to the reasonable accommodation element, Molina-Parrales argues that SHS failed to accommodate in her request for leave between September 14 to September 20. SHS contends that

it gave time off to Molina-Parrales consistent with the medical condition it considered to be Molina-Parrales's disability, but that the leave she requested on the dates in question was not related to her disability, pointing instead to a note in Molina-Parrales's medical records indicating that she had a "left foot nodule" as separate and distinct from the disability caused by her back injury

Under the ADA, discrimination includes failure to make "reasonable accommodations" for the "known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). "Reasonable accommodations" can include:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B) (1990) (amended 2008).

The determination of whether an accommodation is "reasonable" is individual and particularized to the employee seeking it. Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775, 782 (6th Cir. 1998) (citing School Bd. of Nassau County v. Arline, 480 U.S. 273, 287 (1987) (concluding that individual attention to cases under the Rehabilitation Act is essential)). The Sixth Circuit has held that "a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances." Id. at 783. The requested leave cannot be indefinite because "when the requested accommodation has no reasonable prospect of allowing the individual to work in the identifiable future, it is objectively not an accommodation that the employer should be required to provide." Walsh v. United Parcel Service, 201 F.3d 718 (6th Cir. 2000).

Here, for Plaintiff's weight restrictions, SHS clearly promptly provided a reasonable

accommodation by assigning Plaintiff to light duty consistent with her physician's instruction until the time of her termination. The facts giving rise to Plaintiff's termination were unrelated to those restrictions. Those facts involved medical conditions that Plaintiff's physician described as releasing Plaintiff to work by September 15th. The subsequent dates from September 16th through 20th, are dates that Plaintiff's physician does not have a specific recollection of approving.

In any event, for "a successful ADA claim, the plaintiff must show that the defendant took an adverse action against him "on the basis of disability." 42 U.S.C. § 12112(a). In the Sixth Circuit, this language requires the plaintiff to show that his disability was a but-for cause of the adverse action. See Lewis v. Humboldt Acquisition Corp., 681 F.3d 312, 321 (6th Cir.2012) (en banc) and .Bailey., 2013 WL 5811647 at *3. To prove a causal connection, Plaintiff should also identify those individuals who are similarly situated yet treated differently. "To be deemed 'similarly situated,' the comparable employee 'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Allen v. Ohio Dept. of Job & Family Servs., 697 F. Supp. 2d 854, 887 (S.D. Ohio 2010) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1991). "In determining whether an allegedly comparable employee is similarly situated, the ultimate question is whether 'all of the relevant aspects of [his/her] employment situation were nearly identical to those of the [comparator's] employment situation.'" Allen, 697 F. Supp. 2d at 887 (emphasis omitted) (quoting Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344 (6th Cir. 1998). "The absence of discipline, alone, is insufficient to show a prima facie case." Allen, 697 F. Supp. 2d at 887 (finding that "because [the Plaintiff] [could not] demonstrate that anyone committed the insubordination he was charged with,

he cannot establish a prima facie case of discrimination with respect to this disparate treatment claim").

Assuming the medical condition in September was a disability, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment decision. Barrett v. Lucent Technologies, Inc., 36 Fed. App'x 835, 841 (6th Cir. 2002). "If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times." Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 453 (6th Cir. 2004) (citation omitted).

Here, the Court concludes that Plaintiff's proof cannot create a material factual dispute that SHS had a legitimate business reason to terminate Plaintiff. SHS promptly and reasonably accommodated Molina-Parrales's disability. Plaintiff's proof does not demonstrate SHS's reasons for her termination to be pretextual. For these reasons, the Court concludes that Plaintiff's proof cannot support a judgment on her ADAAA claims for discrimination and that SHS had a legitimate basis for terminating Molina-Parrales because she did not comply with SHS's leave policy.

As to Plaintiff's retaliation claim under the ADA, this Circuit applies the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden-shifting approach to a claim for retaliation under the ADA. Bryson v. Regis Corp., 498 F.3d 561, 577 (6th Cir. 2007). To state a claim for employment discrimination under the ADA using indirect evidence, Plaintiff must establish a prima facie case, showing that: (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse action. If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to

establish a legitimate, nondiscriminatory reason for the adverse employment action. The plaintiff, of course, bears the ultimate burden of proving that the proffered reason for the action was merely a pretext for discrimination. See Penny v. United Parcel Service, 128 F.3d 408 (6th Cir. 1997) (citations omitted).

To be actionable, Plaintiff's disability must be causal of the employer's decision, but need not be the "sole" or "motivating" cause. In Lewis v. Humboldt Acquisition Corp., Inc., 681 F.3d 312, 314 (6th Cir. 2012), the Sixth Circuit stated: "Consistent with the Supreme Court's decision in Gross v. FBL Financial Services, 557 U.S. 167 (2009), we see no reason to insert the one addendum ('solely') or the other ('a motivating factor') into the ADA." Instead, "the ADA bar[s] discrimination 'because of' an employee's age or disability, meaning that they prohibit discrimination that is a 'but for' cause of the employer's adverse decision." Id. at 321 (quoting Gross, 557 U.S. at 176).

To establish a causal connection between the protected activity and the adverse employment action, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in protected activity. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). The Sixth Circuit has stated that "[t]emporal proximity alone in the absence of other direct or compelling circumstantial evidence is generally not sufficient to support a finding of causal connection." Id. at 566; see also Weatherby v. Fed. Express, 457 Fed. App'x 480, 492 (6th Cir. 2012); Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 596 (6th Cir. 2007); Ozier v. RTM Enters. of Ga., Inc., 229 Fed. App'x 371, 377 (6th Cir. 2007).

In the Sixth Circuit, temporal proximity may be sufficient where an employee's protected

activity is immediately followed by an adverse employment action. Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008); see Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 563 (6th Cir. 2004) (finding that temporal proximity of three months was "significant enough to constitute sufficient evidence of a causal connection for the purpose of satisfying [the plaintiff's] burden of demonstrating a prima facie case"); DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004) ("[T]his Circuit has embraced the premise that in certain distinct cases where temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise.").

"'[A]t the prima facie stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible.'" Nguyen, 229 F.3d at 566 (quoting EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997)). "'[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case.'" Grace v. USCAR, 521 F.3d 655, 677 (6th Cir. 2008) (citing Wexler v. White's Fine Furniture, 317 F.3d 564, 574 (6th Cir. 2003)).

For the reasons stated on Plaintiff's Title VII and ADAAA discrimination claims, the Court concludes that Plaintiff's proof could not support a judgment on her ADA retaliation claim

Without a federal law claim, the Court lacks jurisdiction over pendent state claims and must dismiss the action. Wal-Juice Bar, Inc. v. Aleut, 899 F.2d 1502, 1504 (6th Cir. 1990).

## C. Conclusion

For these reasons, the Court concludes that the Defendant's motion for summary judgment (Docket Entry No. 16) should be granted as to Plaintiff's federal law claims, but Plaintiff's state law

claims are dismissed without prejudice.

An appropriate Order is filed herewith.

**ENTERED** this the _____ day of January, 2014.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court